AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>In the matter of the search of one Apple cellular phone currently in ATF evidence locker at ATF offices 200 Chestnut Street in Philadelphia, Pennsylvania. | )<br>)<br>)<br>)   Case No. 26-MJ-875<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attached Affidavit

located in the _____EASTERN_____ District of _____PENNSYLVANIA_____ , there is now concealed *(identify the person or describe the property to be seized):*

Information associated with the Apple cellular phone that is in the care, custody or control of ATF, Philadelphia

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 1201 | Kidnapping |
| 18 U.S.C. § 924(c)(1)(A) | Use of a firearm during and in relation to a crime of violence |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/S/ James C. Hughes
*Applicant's signature*

_____
James C. Hughes, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41(d)(3) by

_____Telephone_____ *(specify reliable electronic means).*

Date: _____

_____
/s/ Craig M. Straw 5-7-2026
*Judge's signature*

City and state:  PHILADELPHIA, PENNSYLVANIA

CRAIG M. STRAW, U.S.M.J.
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE APPLE CELLULAR PHONE CURRENTLY IN ATF EVIDENCE LOCKER AT ATF OFFICES 200 CHESTNUT STREET IN PHILADELPHIA, PENNSYLVANIA. | Case No. 26-MJ-875 |

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION FOR A SEARCH WARRANT**

I, James C. Hughes, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since June 2018.  Prior to my employment with ATF, I was a United States Federal Air Marshal for approximately eight and a half years.  I am a graduate of the Criminal Investigator Training Program and the Special Agent Basic Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.  I am currently assigned to a specialized enforcement group, the ATF Philadelphia Group VI Violent Crimes Task Force, whose primary mission is to investigate those individuals and groups that are engaged in the commission of federal firearms and narcotics violations. Additionally, our task force is a High Intensity Drug Trafficking Area (HIDTA) Group, meaning we also specialize in the investigation of narcotics-related offenses of federal firearms

1

laws, particularly criminal organizations engaged in ongoing narcotics distribution and trafficking conspiracies. During my tenure as an agent, I have participated in investigations of the above on numerous occasions.

3.     Based on the facts set forth in this affidavit, there is probable cause to believe Christopher Fernandez (hereafter "FERNANDEZ") committed the crimes of carjacking in violation of 18 USC § 2119, kidnapping in violation of 18 USC § 1201(a) (2 counts), using, carrying and brandishing a firearm during and in relation to a crime of violence in violation of 18 USC § 924(c)(1)(A)(ii), and aiding and abetting in violation of 18 USC § 2, and there is evidence of those violations of federal law, in a cellular phone currently in evidence at the ATF Group VI office.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all my knowledge about this matter or FERANDEZ. I have set forth only those facts I believe are essential to establish the necessary foundation for the search warrant of the cellular phone (hereafter referenced as **SUBJECT PHONE 1**). This affidavit does not exhaust my knowledge, or that of other agents, of the facts and circumstances surrounding this investigation.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

5.     The property to be searched, **SUBJECT PHONE 1**, is an Apple, Inc., iPhone, of unknown model or any other identifiers, with a metallic wallet attached containing a State of Florida Identification card for FERNANDEZ, recovered from his person when he was arrested.

6.     The cellular telephone listed above is presently in ATF custody in Philadelphia, Pennsylvania, having been provided to your affiant following FERNANDEZ's arrest by the United States Marshals Service (USMS) in Orlando, Florida, following his indictment in the Eastern

2

District of Pennsylvania. The cellular phone has remained in "Airplane Mode" and connected to power since ATF took custody of it, and based on your affiant's training and experience, it therefore remains in the same state it was when it was in the possession of FERNANDEZ in Florida when he was arrested.

7.      The applied-for-warrant would authorize the forensic examination of **SUBJECT PHONE 1** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.      On or about June 3, 2024, the Philadelphia Police Department (PPD) received an emergency call regarding a robbery. PPD 15ᵗʰ District personnel responded to the call and, in summary, the investigation was referred to the PPD's Special Victims Unit (SVU), due to the fact the victims stated they had been carjacked, kidnapped, and robbed point-of-gun by several individuals. During the carjacking/robbery ten "skills machines," a firearm, cell phones and the victim's U-Haul were taken.  The victims had their hands zip tied behind their backs, had bags placed over their heads, were forced into a vehicle and transported several miles away from the scene and dropped off in a cemetery.

9.      Your affiant adopted the investigation federally and, on or about May 22, 2025, received a True Bill of Indictment in the Eastern District of Pennsylvania against FERNANDEZ and others. FERNANDEZ was indicted on the charges of carjacking in violation of 18 USC § 2119, kidnapping in violation of 18 USC § 1201(a) (2 counts), using, carrying and brandishing a firearm during and in relation to a crime of violence in violation of 18 USC § 924(c)(1)(A)(ii), and aiding and abetting in violation of 18 USC § 2. Thus there is probable cause to believe that FERNANDEZ committed the charged crimes.

3

10. Further investigation by your affiant and PPD SVU personnel indicated FERNANDEZ was likely residing outside the Commonwealth of Pennsylvania at the time of his indictment and had been splitting time between Florida and Pennsylvania. As a result, your affiant referred the matter of FERNANDEZ's arrest to the ATF Miami Field Division personnel who assisted the USMS in safely arresting FERNANDEZ on or about June 23, 2025. FERNANDEZ was extradited to the EDPA following his arrest.

11. Following FERNANDEZ's arrest, on or about June 3, 2025, ATF Miami Field Division personnel sent your affiant **SUBJECT PHONE 1** via private and secure carrier with a monitored tracking number. Your affiant obtained the cellular phone which has remained in ATF custody, on a charger and in "airplane" mode, since. Upon receipt, I observed **SUBJECT PHONE 1** had a magnetic bifold wallet attached to the back of **SUBJECT PHONE 1**, and that the wallet contained a State of Florida identification card for FERNANDEZ.

12. Your affiant reviewed the results of a cell phone extract from co-defendant Edwin APONTE which indicated that FERNANDEZ and APONTE had cell phone communication (text messages and phone calls) in the days before and the weeks after the crimes committed on June 3, 2024, which strongly suggests they are related to the charges in the indictment. Among the many text messages on June 2, 2024, APONTE and FERNANDEZ exchanged texts regarding needing to make money. Between June 8, 2024, and June 12, 2024, APONTE exchanged texts with FERNANDEZ referring to picking up and selling "the machine." On June 15, 2024, after co-defendant POLANCO-LOPEZ was arrested, APONTE and FERNANDEZ exchanged text messages seeming to refer to Polanco-Lopez's and APONTE saying, "I hope he don't tell." FERNANDEZ responds, "if that was ever a question everything should have been deaded." To which APONTE responds, "so you think he go booked for something else?"

4

13.    I know that criminal actors often store contact lists, address books, calendars, photographs, video and audio files, text messages, call logs, and voicemails in their cell phones that can give insight into their co-conspirators and associates. Cellular telephones contain address books with names, addresses, photographs, and phone numbers of a person's regular contacts.  I am aware criminal actors frequently list associates or co-conspirators in directories, often by nickname, or to avoid detection by others.  Such directories as the ones likely contained in the **SUBJECT PHONE** 1, are one of the few ways to verify the numbers being used by specific criminal actors.

14.    In addition to the files and directories stored on the physical phone, I know the phone, being an Apple, Inc., iPhone, is likely linked to an email address and an "iCloud" internet backup with a unique email address. That information may be contained in that phone and may lead to further investigative efforts to obtain critical evidence.

15.    There is probable cause to believe that communications and related data around the time period of the robbery/carjacking on June 3, 2024 until FERNANDEZ's arrest in Florida on June 23, 2025, will provide further evidence of his crimes, and evidence against other perpetrators he may be associated with in committing his crimes. I know that those involved in criminal acts communicate with associates or co-conspirators using cellular telephones to make telephone calls. In addition, I know those involved in criminal offenses involving more than one person communicate with associates or co-conspirators using cellular telephones to send e-mails and text messages. By analyzing call and text communications, agents can determine the identity of co-conspirators and associated telephone numbers, as well as if there were communications between associates before, during, or after the commission of the crimes.

16.    In addition, I know that those committing crimes often take photographs or make

5

videos of themselves and their co-conspirators and retain them on their electronic devices such as cellular telephones. This evidence would show associations between accomplices, i.e., photographs of accomplices and/or individuals common to co-conspirators. Based on our training and experience, those who commit these crimes often store these items on their phones to show to associates, and/or to upload to social media.

17.     Furthermore, based on my training and experience and the training and experience of other agents, I know that criminal actors often use a cellular phone's Internet browser for web browsing activity related to their activities.  In addition, I know that criminal actors also use their cellular telephones Internet browser to update their social networking sites (e.g., Facebook) in order to communicate with co-conspirators, and to display firearms, or to post photographs of locations where they have traveled.

18.     In addition, criminal actors sometimes use cellular telephones as navigation devices, obtaining maps and directions to various locations in furtherance of their criminal offenses.  These electronic devices may also contain GPS navigation capabilities and related stored information that could identify where **SUBJECT PHONE 1** was located at or near the time of the incidents.

19.     Additionally, in my training and experience, it is almost ubiquitous that everyone in the United States has a cell phone and keeps it close by at almost all times. Similarly, those who commit criminal acts also usually carry a cell phone with them to crime or keep one nearby. Even if a person has a cell phone but does not carry that cell phone on him during the commission of a crime, the inactivity on the cell phone during the commission of a crime can constitute evidence of involvement in that crime.

20.     Furthermore, based on my training and experience, forensic evidence recovered

6

from the review of a cellular telephone can also assist in establishing the identity of the user of the device, how the device was used, the purpose of its use, and when it was used.  In particular, I am aware that cellular telephones are all identifiable by unique numbers on each phone, including serial numbers, international mobile equipment identification numbers (IMEI) and/or electronic serial numbers (ESN). The search of each phone helps determine the telephone number assigned to each device, thus facilitating the identification of the phone as being used by members of the conspiracy.  In addition, I am aware that by using forensic tools, information/data that users have deleted may still be able to be recovered from the device.

21.     Thus, in summary, searching **SUBJECT PHONE 1** will provide evidence of the "who, what, when, where and why" of the offenses under investigation. There is probable cause to believe **SUBJECT PHONE 1** will contain evidence that can confirm or negate the presence of FERNANDEZ in the area of the crimes.

22.     **SUBJECT PHONE 1** is currently in the lawful possession of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Because **SUBJECT PHONE 1** is already in the lawful possession of the ATF and the execution of this warrant does not involve the further intrusion into properly currently held by a civilian I submit to good cause exists to permit the execute the warrant at any time of day or night.

23.     **SUBJECT PHONE 1** is currently in storage at ATF Philadelphia, located at 200 Chestnut Street in Philadelphia, Pennsylvania.  In my training and experience, I know that **SUBJECT PHONE 1** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when **SUBJECT PHONE 1** first came into the possession of the ATF.

**TECHNICAL TERMS**

24.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Cellular telephone:   A cellular telephone (or wireless telephone or mobile telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records of the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS")

consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

c. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

e. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed

9

and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

f.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

g.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving

them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

h.  Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, which is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "Wi-Fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

25.   Based on my training, experience, and research, I know that the Devices listed in Attachment A have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and/or PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

26.   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

11

27.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

**CONCLUSION**

28.     Based on my training and experience working similar investigations, I submit the request for the search warrant of **SUBJECT PHONE 1** be granted based on the aforementioned. **SUBJECT PHONE 1** is likely to contain material of evidentiary value pertaining to the criminal activity FERNANDEZ engaged in leading up to the crimes committed on June 3, 2024, and the crimes themselves, due to the strong likelihood that FERNANDEZ carried over the same customer profile, as **SUBJECT PHONE 1** is a cellular phone manufactured by "Apple, Inc.," and "Apple, Inc." provides the "Apple iCloud" and "Apple User ID" as methods to "back up," or maintain certain information, including but not limited to photographs, videos, subscriptions and purchases, contacts, call logs, emails, application usage and preferences, GPS and location history, additional backup history, and general account information, including emails associated with all the above

29.     Evidence of the older information, specifically pertaining to the preceding year's criminal acts for which FERNANDEZ et al were indicted in EDPA, may be contained within **SUBJECT PHONE 1's** archives, or evidence that those potential items were backed up to a cloud service or personal computer may also exist in the appearance of timestamp histories and record of user actions.

30.     For the reasons set forth above, I believe there is probable cause to search the cellular phone of FERNANDEZ, herein **SUBJECT PHONE 1**, for evidence of violations of 18 USC § 2119 (Carjacking); 18 USC § 1201(a) (kidnapping)(2 counts); 18 USC § 924(c)(1)(A)(ii) (Using, carrying and brandishing a Firearm during and in relation to a crime of violence); and 18 USC § 2 (Aiding and Abetting).

31.     I know, based on my training and experience, the method in which the **SUBJECT PHONE 1** is stored in the ATF Philadelphia Group VI headquarters maintains the data on the

physical device itself, and that, in summary, the time between the seizure of **SUBJECT PHONE 1** and the potential execution of a federal search warrant will have no effect on the data within **SUBJECT PHONE 1**, and that the data will be available for analysis in the same state it would have been available on the day it was seized.

32.    I believe there is probable cause to conduct a search of **SUBJECT PHONE** 1 consistent with Attachment B which permits a search of all stored data to include, but not limited to contents of the telephone directory, electronic libraries, stored communications including voice mail, voice messages and text messages, contact lists, applications, reference material aiding in the furtherance of criminal activity, photographs, time and date stamps, Global Positioning System (GPS) data, stored internet searches and any other memory feature relating to the offenses outlined in the affidavit of probable cause.

_/S/ James C. Hughes_
James C. Hughes, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)

Subscribed and Sworn via telephone on May ____, 2026.

_/s/ Craig M. Straw 5-7-2026_

HONORABLE CRAIG M. STRAW
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## ITEMS TO BE SEARCHED

The property to be searched the cellular telephone listed and shown below.  This device is currently located in the temporary ATF Group VI Evidence Locker in Philadelphia, PA:

Cellular Telephone:

**SUBJECT PHONE 1** – An Apple, Inc., iPhone, of unknown model (suspected as either an iPhone 15 ProMax or an iPhone 16) or any other identifiers, with a metallic wallet attached containing a State of Florida identification card for FERNANDEZ.







This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

## INFORMATION/ITEMS TO BE SEARCHED FOR AND SEIZED

1.        All records on the **SUBJECT PHONE 1** described in Attachment A, from May 13, 2024 through June 23, 2025 that are evidence, instrumentalities, and fruits of violations of 18 USC § 2119 (Carjacking); 18 USC § 1201(a) (Kidnapping)(2 counts); 18 USC § 924(c)(1)(A)(ii) (Using, carrying and brandishing a firearm during and in relation to a crime of violence); and 18 USC § 2 (Aiding and Abetting).

      a.  All records, to include videos, photos, images, messages, notes, e-mails, data, location information, metadata, web search and other browser data, and other items, relating to firearms or controlled substances;

      b.  All records, to include videos, photos, images, messages, notes, e-mails, data, location information, metadata, web search and other browser data, and other items, relating to firearms, firearms parts and accessories, ammunition, and controlled substances;

      c.  Location data, including GPS records as relevant to the crimes under investigation;

      d.  Evidence relating to relationships between the subjects and co-conspirators;

      e.  Evidence of co-conspirators and associates who may have knowledge of and/or participated in the crime under investigation;

      f.  Evidence indicating the device owner's state of mind as it relates to the crime under investigation;

3

g.  Information relating to the identities of person(s) who communicated with the subject account user about matters relating to firearms;

h.  Evidence of attachment of other devices, and counter-forensic devices (and associated data) designed to eliminate data from the device;

i.  Passwords, encryption keys, and other access devices that may be necessary to access any of the devices,

j.  Records of or information about Internet Protocol addresses used by the device,

k.  Evidence of user attribution showing who used or owned SUBJECT PHONE 1, such as communications (including voice mail, voice messages, text messages, and communications via applications downloaded onto the phone), photographs, videos, saved usernames and passwords, documents, browsing history, GPS data, address books, directories, calendars, evidence of the dates and times the device was used.

2.  As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form, including:

a.  Forms of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

b.  Data that has been manually programmed into a GPS navigation system, as well as data automatically stored by the GPS navigation system, including any and all

4

electronic data which can be collected, analyzed, created, displayed, converted, stored, concealed, or transmitted, or similar computer impulses or data.

c. Stored electronic information and communications, including but not limited to, telephone or address directory entries consisting of names, addresses and telephone numbers; logs of telephone numbers dialed, telephone numbers of missed calls, and telephone numbers of incoming calls; schedule entries; stored memoranda; stored text messages; stored photographs; store audio; and stored video.

3. Evidence and contents of logs and files on the device, such as those generated by the device's operating system, which describes the history and use of the device, including but not limited to files indicating when files were written, were opened, were saved, or were deleted. Evidence tending to show the identity of the person using the device at the time any actions relating to the above offenses were taken.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐Original          ☐Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| In the matter of the search of one Apple cellular phone currently in ATF evidence locker at ATF offices 200 Chestnut Street in Philadelphia, Pennsylvania. | )<br>)<br>)<br>)<br>)<br>) |

26-MJ-875

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the     EASTERN          District of    PENNSYLVANIA
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

**YOU ARE COMMANDED** to execute this warrant on or before     5/21/2026          *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   the duty Magistrate                          .
                                                              *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      5-7-2026 at 2:21pm               /s/Craig M. Straw
                                                              *Judge's signature*

City and state:        Philadelphia, PA              CRAIG M. STRAW, U.S.M.J.
                                                              *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br><br>26-MJ-875 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:  _____          _____
                                                                              *Executing officer's signature*

                                                                    _____
                                                                              *Printed name and title*